# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Case No. 15-cv-00198-RM-KMT

ARTHUR SANTISTEVAN,

      Plaintiff,

v.

TIMOTHY R. STEGINK,
SUSAN SCOHY,

      Defendants.

---

## OPINION AND ORDER

---

On January 29, 2015, plaintiff Arthur Santistevan ("plaintiff") filed a *pro se* complaint against defendants Timothy Stegink ("Stegink"), an investigator for the Jefferson County Sheriff's Office ("the JCSO"), Susan Scohy ("Scohy"), an investigative specialist for the JCSO, and "John/Jane Doe who are not known at this time" ("the Doe defendants"), alleging various violations of his constitutional rights related to an arrest and subsequent prosecution in Colorado state court. (ECF No. 1.)

After plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915 ("§ 1915") was granted, on February 27, 2015, U.S. Senior Judge Lewis Babcock reviewed the sufficiency of the complaint *sua sponte* pursuant to § 1915(e)(2)(B)(ii). (ECF Nos. 3, 4, 7.) The court first dismissed all of the claims against the Doe defendants because plaintiff failed to allege that they were personally involved in the alleged constitutional deprivations. (ECF No. 7 at 4-5.)

The court then dismissed all of the claims against Steglink and Scohy, except for a claim of malicious prosecution pursuant to the Fourth Amendment.  (*Id*. at 5-10.)

On April 27, 2015, Steglink and Scohy filed a motion to dismiss plaintiff's malicious prosecution claim.  (ECF No. 11.)  Plaintiff then filed a response, to which Steglink and Scohy replied.  (ECF Nos. 16, 18.)  The Court referred the motion to dismiss to U.S. Magistrate Judge Kathleen Tafoya, who entered a report and recommendation ("R&R"), with respect to the same on February 26, 2016.  (ECF Nos. 12, 21.)  Although the Magistrate Judge found that the motion to dismiss "failed to analyze the sufficiency of [p]laintiff's malicious prosecution claim," the Magistrate Judge reviewed the sufficiency of the claim under § 1915(e)(2)(B)(ii) instead.  (ECF No. 21 at 5.)  After doing so, the Magistrate Judge found that plaintiff had failed to state a malicious prosecution claim against either Steglink or Scohy, and recommended granting the motion to dismiss.  (*Id*. at 5-8.)  Plaintiff filed objections to the R&R, and Steglink and Scohy filed a response to plaintiff's objections.  (ECF Nos. 24, 29.)

Therefore, the motion to dismiss and the R&R with respect thereto are now before the Court.  For the reasons discussed below, the Court REJECTS plaintiff's objections to the R&R, REJECTS IN PART and ADOPTS IN PART the R&R, and DENIES AS MOOT the motion to dismiss.

## I.   Review of a Magistrate Judge's Report and Recommendation

A district court may refer pending motions to a magistrate judge for entry of a report and recommendation.  28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).  The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3).  A party is entitled to a *de novo* review of those portions of the report and recommendation to which specific objection is made.  *See* Fed.R.Civ.P. 72(b)(2), (3).

"[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Furthermore, arguments not raised before the magistrate judge need not be considered by this Court. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## II.   Factual Background

In his objections, although plaintiff challenges the Magistrate Judge's analysis of the sufficiency of his factual allegations, he does not challenge any of the Magistrate Judge's factual findings as set forth in the "Factual and Procedural Background" of the R&R.  (*See generally* ECF No. 24; *see also* ECF No. 21 at 1-2.)  As such, the Court ADOPTS that part of the R&R.

## III.   Discussion

### A.     The Motion to Dismiss

To begin with the Court agrees with the Magistrate Judge's finding that the motion to dismiss failed to analyze the sufficiency of the malicious prosecution claim.  (ECF No. 21 at 5.)  Notably, nowhere in the motion to dismiss does it even explain what the common law elements are to establish such a claim.  (*See generally* ECF No. 11.)  Although these common law elements are only a "starting point" in the analysis, *Pierce v. Gilchrist*, 359 F.3d 1279, 1286-90 (10th Cir. 2004), unmoored from them, the motion to dismiss strays into shallow water in not addressing issues highly relevant to the analysis.  (*See* ECF No. 11 at 5-10.)  Put more simply, the motion to dismiss is largely worthless for its stated purpose: to explain why plaintiff's malicious prosecution claim should be dismissed.  Unlike the Magistrate Judge, though, the Court will not reward Stegink and Scohy by

granting their motion to dismiss. Rather, given that the Magistrate Judge analyzed the malicious prosecution claim under § 1915(e)(2)(B)(ii), the Court believes that the appropriate course is to DENY the motion to dismiss as MOOT, and review the Magistrate Judge's § 1915(e)(2)(B)(ii) recommendation. *See Houston v. Sperling*, 2013 WL 819846, at *1 (E.D. Okla. 2013) (denying motions to dismiss as moot after finding that the plaintiff's claims should be dismissed pursuant to § 1915(e)(2)(B)(ii)).

### B.      Sufficiency of Plaintiff's Claim

In reviewing a complaint under § 1915(e)(2)(B)(ii), a court must construe the complaint liberally and "accept the allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001). The same standard for dismissals under Fed.R.Civ.P. 12(b)(6) is employed for dismissals under § 1915(e)(2)(B)(ii). *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Therefore, factual allegations in the complaint must "'raise a right to relief above the speculative level.'" *Id*. at 1218 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Curley*, 246 F.3d at 1281 (quotation omitted).

Here, the sole remaining claim is the one for malicious prosecution under the Fourth Amendment. To survive dismissal of such a claim, a plaintiff must allege sufficient facts from which the following may be plausibly inferred: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the

4

defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008); *see also Twombly*, 550 U.S. at 555-556. Ultimately, the Fourth Amendment is violated "if police knowingly or with reckless disregard included false statements in affidavits that formed the basis for the issuance of warrants." *Pierce*, 359 F.3d at 1289.

## 1.    Defendant Scohy

Plaintiff's sole allegation against Scohy is that, prior to plaintiff's arrest, she created a photographic array that was relied upon in Stegink's arrest warrant and viewed by the only witness to the alleged crime, but was subsequently found to be impermissibly suggestive and excluded from the criminal trial. (ECF No. 1 at 3-4, 6-7.) Plaintiff alleges that Scohy placed photographs of six individuals in the array, five of which were "[w]hite [m]ales" and the other was "a Native American," in order to "single out" plaintiff because he is a Native American. (*Id.* at 7.) The Magistrate Judge found that Scohy's photographic array did not cause plaintiff's alleged constitutional injury because a judge held a preliminary hearing on September 23, 2009, at which evidence was independently evaluated, citing *Taylor v. Meachem*, 82 F.3d 1556 (10th Cir. 1996), and a certified exhibit attached to the motion to dismiss which contains the "registry of actions" from plaintiff's state criminal proceeding. (ECF No. 21 at 6; ECF No. 11-1; ECF No. 11 at 2.)[1]

The Court disagrees in two main respects. First, although the "registry of actions" does state that a preliminary hearing was held on September 23, 2009, the exhibit provides no indication that the hearing official "independently listened to testimony and evaluated evidence," as the Magistrate

---

[1] The Magistrate Judge properly considered the exhibit at ECF No. 11-1 because it is subject to judicial notice. *See Barrett v. Pearson*, 355 F. App'x 113, 116 (10th Cir. 2009) (explaining that a court is authorized to take judicial notice of proceedings in other courts "if they have a direct relation to the matters at issue.") (alterations and quotations omitted).

Judge suggested.  (*See* ECF No. 11-1 at 2; ECF No. 21 at 6.)  Rather, the exhibit is silent as to precisely what occurred at the preliminary hearing, other than that the hearing was held and an arraignment was set for a future date.  (*See* ECF No. 11-1 at 2.)  And, as discussed below, the nature of the evidence presented may be crucial.

Second, and more important, the Magistrate Judge misapplied *Taylor*.  In *Taylor*, the Tenth Circuit Court of Appeals affirmed the district court's grant of summary judgment as to a malicious prosecution claim premised upon an arrest warrant containing allegedly false statements and omissions because the false statements and omissions would not have altered the determination that probable cause existed.  82 F.3d at 1562-63.  The Tenth Circuit then observed that the plaintiff "remained incarcerated for seven weeks after his arrest, during which time a preliminary hearing was conducted, in which numerous witnesses testified … and following which another judge determined that [probable cause existed]." *Id*. at 1563.  The Tenth Circuit explained that, having concluded that the plaintiff's Fourth Amendment rights were not violated in connection with his arrest, it could proceed to determine whether his rights were violated during the seven-week incarceration prior to the preliminary hearing.  *Id*.  The Tenth Circuit concluded that such an inquiry was unnecessary, however, because the complaint did not allege that the defendant engaged in impropriety following the preparation of the arrest warrant affidavit, or that the defendant caused false or perjured testimony to be presented at the preliminary hearing.  *Id*. at 1563-64.  In other words, in *Taylor*, the fact that the state court held a preliminary hearing was of no consequence to the plaintiff's Fourth Amendment claim connected to his arrest; it was relevant only to any Fourth Amendment claim the plaintiff may have raised as to his post-arrest incarceration prior to the preliminary hearing.  *See id*.

In the complaint, plaintiff's allegations principally appear to concern Scohy giving "support to the finding of probable cause and the falsified information for the *Arrest Warrant* …." (ECF No. 1 at 7 (emphasis added)).  Plaintiff also alleges, however, that the photographic array, along with the other information contained in the arrest warrant affidavit, was the basis for the state court's decision to bind plaintiff over for arraignment.  (*Id.* at 4.)  Thus, construing plaintiff's allegations liberally, it appears that plaintiff raises malicious prosecution claims related to (a) his arrest caused by the arrest warrant, and (b) his continued incarceration prior to the September 23, 2009 preliminary hearing.  In this light, with respect to the latter claim, if plaintiff had sufficiently alleged that the photographic array "somehow caused false or perjured testimony to be presented at the preliminary hearing," then the fact that a preliminary hearing was held may not have necessitated dismissal of plaintiff's claim, at least not at this stage in proceedings.  *See Taylor*, 82 F.3d at 1563-64.  As a result, the Court REJECTS the Magistrate Judge's recommendation as it relates to defendant Scohy.  The Court will now review each claim mentioned *supra* separately.

### a.      Plaintiff's Arrest

Although plaintiff alleges repeatedly that the photographic array was excluded from his trial because it was impermissibly suggestive, this bears no relevance to his malicious prosecution claim against Scohy.  Specifically, even if the photographic array was impermissibly suggestive, this does not mean that the array was false,[2] that there was a lack of probable cause to arrest plaintiff, or that the array caused plaintiff's arrest.  *See Wilkins*, 528 F.3d at 799; *Pierce*, 359 F.3d at 1289.  The

---

[2] With respect to the falsity of the array, plaintiff attached a copy of the arrest warrant affidavit to the complaint, and that document states that the photographic array contained plaintiff's photograph.  (ECF No. 1 at 29.)  Thus, even though the photographic array was excluded from plaintiff's trial on the ground that it was impermissibly suggestive, given that it contained plaintiff's picture, it could hardly be argued that the array *itself* was false.

closest plaintiff gets in this regard is in alleging that the photographic array was created "to sway the only witness in the criminal case to pick out [plaintiff] as the perpetrator."  (ECF No. 1 at 3.)  Plaintiff fails to allege, though, that even if swayed, the witness' identification was false, or otherwise amounted to a constitutional violation.  *See United States v. Sierra*, 390 F. App'x 793, 797-798 (10th Cir. 2010) (explaining that, even if a photographic array is impermissibly suggestive, there is no constitutional violation if the identification is "nevertheless reliable in view of the totality of the circumstances.").  This is important because "the ultimate question" that must be reached is whether plaintiff has proven a constitutional violation.  *See Sperry v. Maes*, 592 F. App'x 688, 694 (10th Cir. 2014).

Here, plaintiff has not alleged that the witness' pre-array identification was not reliable.  (*See generally* ECF No. 1.)  Moreover, the probable cause affidavit, which plaintiff attached to the complaint, would not support any such allegation.  The affidavit explains that the witness, Robert Bevington, observed the perpetrator standing in his hallway, the witness then spoke with the perpetrator and told him to get out of the witness' house, the witness walked toward the perpetrator, and, after the perpetrator exited the house, the witness saw him walking down the driveway.  (ECF No. 1 at 29.)  The witness then described the perpetrator as follows to a police officer: "Native American, about five feet ten inches tall, 170 pounds, with black hair worn in a ponytail about six inches below the collar. [T]he male had a tattoo across his Adam's apple and was wearing a baseball cap, blue jeans, black nylon jacket and sunglasses.  The male had a slight growth of facial hair." (*Id.*)  The affidavit further stated that, eight days later, the witness was shown the photographic array, and that the witness was "ninety to one hundred percent positive" that plaintiff was the perpetrator.  (*Id.* at 30.)  The affidavit described plaintiff as five feet ten inches tall, 190 pounds, with grey hair.  (*Id.*)

8

In this light, based upon the witness' detailed description of the perpetrator on the day of the offense, the ability of the witness to observe and speak to the perpetrator in the witness' home, the similarities between the witness' and the actual descriptions of the alleged perpetrator, and the short period of time that passed between the offense and the viewing of the photographic array, the Court can conceive of no amendments to the complaint that would cure the pleading deficiency with respect to this "ultimate question." *See Sierra*, 390 F. App'x at 797-798 ("In determining whether an impermissibly suggestive photo lineup nonetheless yielded a sufficiently reliable identification, we consider the opportunity of the witness to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the level of certainty the witness demonstrates when the lineup is given, and the time that has elapsed between the criminal activity alleged and the presentment of the lineup to the witness."); *see also Curley*, 246 F.3d at 1281. As a result, in addition to the other pleading deficiencies noted *supra*, the Court shall DISMISS this claim pursuant to § 1915(e)(2)(B)(ii).

### b.  Plaintiff's Continued Incarceration

To the extent that plaintiff raises a claim related to his continued incarceration being caused by the photographic array, in that he alleges that the array was used as a basis to bind him over at the September 23, 2009 preliminary hearing, that claim suffers from similar deficiencies as the claim related to plaintiff's arrest.

First, in the complaint, plaintiff fails to expressly allege that the photographic array caused false or perjured testimony to be presented at the preliminary hearing. (*See* ECF No. 1 at 3-4, 6-7.) As with the claim related to plaintiff's arrest, the closest plaintiff gets in this regard is in alleging that the photographic array was created "to sway the only witness in the criminal case to pick out

9

[plaintiff] as the perpetrator." (*Id*. at 3.)  This does not mean, however, that (i) the witness testified at the preliminary hearing,[3] or (ii) even if the witness did testify, that his identification of plaintiff was constitutionally unreliable.  Thus, even if the photographic array did sway the witness, plaintiff has failed to allege sufficient facts to make it plausible that the photographic array improperly influenced the decision to bind him over for arraignment.  *See Taylor*, 82 F.3d at 1563-64.

In addition, plaintiff has failed to allege that Scohy acted with malice or with reckless disregard in connection with the preliminary hearing.  *See Wilkins*, 528 F.3d at 799; *Pierce*, 359 F.3d at 1289.  Instead, plaintiff's allegations with respect to Scohy's intent pertain solely to the arrest warrant.  (*See* ECF No. 1 at 7 (alleging that Scohy created the photographic array "with a deliberate intent to give support to the finding of probable cause and the falsified information for the [a]rrest [w]arrant," and that the "purpose" of the array was to create probable cause for the arrest warrant)).  In this light, plaintiff has failed to allege that Scohy acted with malice in connection with plaintiff's continued incarceration.  As a result, the Court reaches the same finding as the one related to plaintiff's arrest: the Court cannot conceive of amendments to the complaint that would cure the many pleading deficiencies against Scohy.  Thus, the Court shall DISMISS plaintiff's claim against Scohy related to plaintiff's continued incarceration.  Because all of the potential claims against Scohy have been dismissed, the complaint is DISMISSED as to defendant Scohy.

### 2.      Defendant Stegink

Plaintiff's allegations against defendant Stegink revolve around Stegink's drafting of an arrest warrant affidavit, and the inclusion therein of information from two different police officers: Detective Todd Pachello ("Pachello") and Officer Michael Mackenzie ("Mackenzie").  (*See*

---

[3] As discussed *supra*, there is no allegation in the complaint, nor do the exhibits on the record speak, as to what evidence was presented at the preliminary hearing.

*generally* ECF No. 1.)  Plaintiff alleges that, in drafting the arrest warrant affidavit, Steginck used

information from Pachello and Mackenzie that was not supported by evidence and "had been proven

to be falsified information."  (*Id*. at 6.)  Plaintiff appears to allege that this information was "lies

known before hand."  (*Id*.)  Plaintiff further alleges that Steginck did not attempt to substantiate the

information that his fellow police officers provided him, and, if he had conducted an independent

investigation, he would have learned that all of the information was unsupported.  (*Id*. at 7, 10.)

The Magistrate Judge found that plaintiff failed to state a claim against Steginck because the

complaint did not sufficiently identify the nature of the information provided to Steginck by Pachello

and Mackenzie.  (ECF No. 21 at 7-8.)  The Magistrate Judge correctly notes that the allegations in

the complaint speak to "the information" provided by Pachello and Mackenzie without delving any

deeper to allege specifically what information Pachello and Mackenzie provided.  (*See generally*

ECF No. 1.)  However, construing the complaint liberally, it appears that the gist of plaintiff's

allegations is that *all* of the information provided by Pachello and Mackenzie was "falsified and

fabricated."  (*See* ECF No. 1 at 4 (alleging that "none of [Pachello and Mackenzie's] information

was substantiated as true.").  This still leaves unanswered what plaintiff means when he describes

all of "the information" as being false.  That question, though, can be answered by the arrest warrant

affidavit attached to the complaint, as that document specifically states what information was

provided by Pachello and Mackenzie.  (*See generally* ECF No. 30 at 29-30.)  As such, the Court

disagrees with the Magistrate Judge's finding that plaintiff failed to sufficiently identify the nature

of the information provided by Pachello and Mackenzie, and thus, REJECTS the R&R as it relates

to Steginck.  As with defendant Scohy, the Court will separately address plaintiff's malicious

prosecution claim in the context of plaintiff's arrest and continued incarceration.

### a.     Plaintiff's Arrest

As discussed *supra*, plaintiff must allege that (1) Stegink caused his arrest, (2) the criminal case terminated in his favor, (3) no probable cause supported the arrest warrant, (4) Stegink acted with malice, and (5) he suffered damages.  *Wilkins*, 528 F.3d at 799.

First, because Stegink prepared the arrest warrant affidavit, and the affidavit was the basis for the issuance of warrant, the Court will assume for present purposes that Stegink caused plaintiff's arrest or prosecution.  *See* Restatement (Second) of Torts § 653 cmt. c (1977) (explaining that a criminal proceeding is initiated by one who "presents to a magistrate a sworn charge upon which a warrant is issued").

Second, plaintiff alleges, and Stegink agrees, that plaintiff's criminal case resulted in two separate hung juries, with the second being followed with the District Attorney dismissing all charges.  (ECF No. 1 at 4; ECF No. 29 at 7.)  In a response to plaintiff's objections to the R&R, Stegink argues that this resolution to the criminal charges is insufficient because it did not result in an acquittal, citing *Wilkins*.  (ECF No. 29 at 7.)  This, though, is a thoroughly misplaced reliance on *Wilkins*.  In that case, charges were dismissed by filing *nolle proseques*.  *Wilkins*, 528 F.3d at 802.  The Tenth Circuit, in citing to the Restatement (Second) of Torts, stated that "[c]riminal proceedings are terminated in favor of the accused by the *formal abandonment of the proceedings by the public prosecutor*."  *Id*. (citing Restatement (Second) of Torts § 659(c) (1977)) (emphasis added).  The Tenth Circuit noted, however, that not all abandonments constitute a favorable termination for the accused, citing Restatement (Second) of Torts § 660.  *Id*. at 802-803.  Although Stegink does not cite to § 660, it is from there that the language regarding acquittals originates (not from the *Wilkins* opinion), but it does not state what Stegink suggests.  Specifically, § 660 states that termination of

12

a criminal proceeding "in favor of the accused *other than by acquittal* is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution *if*," and then lists four instances where termination other than by acquittal is insufficient. *See* Restatement (Second) of Torts § 660 (1977) (emphasis added). In other words, an acquittal is *only* required in the four instances listed in § 660, and none of those apply here. This rather large qualifier is entirely missing from Stegink's response. Given that Stegink's counsel cites to *Wilkins*, the Court can only assume that either counsel did not read the entirety of the opinion, which is bad enough, or momentarily forgot that which she read. At best, the Court finds counsel's argument to be incredibly disingenuous and suggests that counsel takes greater care with her argumentation in the future.[4] Returning to the analysis of this element, in light of the reasoning and holding in *Wilkins*, and the language of § 660, the Court finds that plaintiff's criminal case was terminated in his favor for purposes of the malicious prosecution claim.

Third, when a warrant affidavit is alleged to contain false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Taylor*, 82 F.3d at 1562 (quotation omitted). "'Probable cause for an arrest is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.'" *Wilkins*, 528 F.3d at 801 (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)); *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998) ("Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an

---

[4] Moreover, the argument was not raised before the Magistrate Judge, and thus, was waived. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

offense has been or is being committed by the person arrested."). The constitutional tort of malicious prosecution "requires proof of lack of probable cause." *McCarty v. Gilchrist*, 646 F.3d 1281, 1285-86 (10th Cir. 2011).

Here, as discussed *supra*, plaintiff has sufficiently alleged that all of the information obtained from Pachello and Mackenzie was false. Plaintiff also alleges that the photographic-array identification was impermissibly suggestive. Plaintiff contends that this information formed the basis for establishing probable cause for his arrest. (ECF No. 1 at 4.) Because plaintiff contends that Pachello and Mackenzie's information was false, it must be excluded from the probable cause analysis. *See Wilkins*, 528 F.3d at 801. As for the photographic array, plaintiff does not argue that it was false; only that is was impermissibly suggestive. (*See generally* ECF No. 1.) For present purposes, and to give plaintiff the benefit of the doubt as to his allegations, the Court will set aside the photographic-array identification from the probable cause analysis. However, as discussed *supra*, the witness' *pre*-array identification is sufficiently reliable for constitutional purposes, and thus, the Court will not exclude that from its analysis. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1265 (8th Cir. 1996) (concluding that, even if an allegedly suggestive showup identification was excluded from the probable cause analysis, police officers still had probable cause to arrest based upon, *inter alia*, a credible victim-witness' description that matched the alleged perpetrator "fairly well").

The arrest warrant affidavit contains further information obtained from the witness following the photographic-array identification. Specifically, the witness provided clarification about a tattoo on the perpetrator's neck—a tattoo that did not appear on the picture of the perpetrator in the photographic array. (ECF No. 1 at 30.) The witness further stated at this time that the perpetrator

entered a white 2008 Dodge Avenger.  (*Id*.)  This information is entirely unrelated to the photographic array, and plaintiff does not allege that it was false, thus, the Court will not exclude it.  In addition, the affidavit contains information from JCSO Deputy Steven Parker ("Parker").  Parker was a police officer dispatched to the witness' house in reference to a criminal trespass.  (*Id*. at 29.)  Parker is not mentioned in the complaint.  (*See generally* ECF No. 1.)  As such, there is no allegation that the information obtained from him was false.  Consequently, the Court will not exclude any of the same.  In this light, contrary to plaintiff's apparent contention, the affidavit did contain information other than that from Pachello and Mackenzie and the photographic array.  The question is whether the remaining information provided probable cause to arrest plaintiff for any offense(s).

Here, plaintiff alleges that he was charged with burglary and criminal trespass.  (*Id*. at 3.)  The arrest warrant affidavit, though, does not specifically delineate the offense(s) for which Stegink believed probable cause existed.  (*See generally* ECF No. 1 at 29-30.)  The affidavit does state that Parker was dispatched in reference to "a criminal trespass," and that there was probable cause to believe that unspecified "criminal offenses" had been committed.  (*Id*.)  Despite the lack of clarity in the arrest warrant affidavit, given that plaintiff was allegedly formally charged with burglary and criminal trespass, the Court will address those offenses.

The Court will start with first degree criminal trespass, as that is the only offense mentioned in the arrest warrant affidavit.  Colorado has three degrees of criminal trespass.  Colo. Rev. Stat. §§ 18-4-502, -503, -504.  Although the complaint does not allege for which offense plaintiff was arrested, the registry of actions indicates that it was first degree criminal trespass involving a dwelling.  (*See* ECF No. 11-1 at 1 (describing the charge as "Trespass 1 - Dwelling")).

Here, there was sufficient information contained in the affidavit for Stegink to reasonably believe that the offense of first degree criminal trespass had been committed.  In Colorado, a person commits first degree criminal trespass "if such person knowingly and unlawfully enters or remains in a dwelling of another …."  Colo. Rev. Stat. § 18-4-502.  First, a reasonable person could believe that the perpetrator knowingly entered, given that the witness told Parker that he asked the perpetrator what the perpetrator was doing in the witness' home, and the perpetrator said, "he was 'looking for my guy.'"  (ECF No. 1 at 29.)  Second, a reasonable person could believe that the perpetrator unlawfully entered because the witness told Parker that, when he saw the perpetrator standing in his hallway, he told the perpetrator to "'get out of his house," repeated this demand thereafter, and, after the perpetrator had left, he called the police.  (*Id*.); *see also People v. Johnson*, 906 P.2d 122, 124 (Colo. 1995) ("'A person unlawfully enters or remains in or upon premises when he is not licensed, invited, or otherwise privileged to do so.'") (quoting Colo. Rev. Stat. § 18-4-201) (internal quotation omitted).  Third, a reasonable person could believe that the perpetrator knowingly and unlawfully entered the dwelling of another because the witness described the building as "'his house,'" and the witness was sleeping in the home prior to the perpetrator entering.  *See id*. at 124-125 ("A dwelling is defined as 'a building which is used, intended to be used, or usually used by a person for habitation.'") (quoting Colo. Rev. Stat. § 18-1-901); *People v. Hanna*, 981 P.2d 627, 629 (Colo. App. 1998) ("the definition of dwelling encompasses the entire residential structure including an attached garage.").

This leaves only whether a reasonable person could believe that the perpetrator was plaintiff.  As discussed *supra*, the witness' detailed description of the perpetrator was sufficiently reliable under the totality of the circumstances to indicate that plaintiff was the perpetrator.  Although the

witness believed that the perpetrator had a tattoo across the neck, while plaintiff only had a tattoo on his left collarbone, the tattoo itself described by the witness was "similar" to the one plaintiff had. (*See* ECF No. 1 at 30); *see also United States v. Martin*, 613 F.3d 1295, 1303 (10th Cir. 2010) ("The officers' information may not have been perfect.  But the Fourth Amendment doesn't require perfection, only probable cause.").  Moreover, Stegink was entitled to rely upon the witness' information to establish probable cause. *See Easton v. City of Boulder, Colorado*, 776 F.2d 1441, 1450-51 (10th Cir. 1985) (explaining that statements of identified victims could be used as a basis for a probable cause determination to support the issuance of a warrant); *Barnes v. Timmons*, 565 F. App'x 736, 738 (10th Cir. 2014) ("'when police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible.'") (quoting *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001)) (alteration omitted); *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 418-419 (4th Cir. 2005) ("[t]he fact that [the police officer] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification."); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity.") (citations omitted); *People v. Valencia*, 257 P.3d 1203, 1208 (Colo. App. 2011) ("when a victim gives information to the police, that information is presumed sufficiently reliable to establish probable cause for an arrest.").

In light of all of the above, the Court finds that Stegink had probable cause to arrest plaintiff for first degree criminal trespass based upon the information not excluded *supra* from the arrest

17

warrant affidavit. However, because a plaintiff may challenge prosecutions "on a charge-by-charge basis," *Miller v. Spiers*, 339 F. App'x 862, 867-868 (10th Cir. 2009), the Court now turns to the second degree burglary charge.

As an initial matter, there is no indication from the face of the arrest warrant affidavit that Stegink contemplated burglary as an offense therein. Notably, the warrant affidavit states that Parker was dispatched in reference to criminal trespass. (ECF No. 1 at 29.) There is no similar mention of burglary. In addition, after reviewing the registry of actions, the Court notes that, in the section describing the charges, the listed charges are "Trespass 1 - Dwelling" and two charges of "Habitual Criminal." (ECF No. 11-1 at 1-2.) This is important because, if plaintiff was not arrested *pursuant to the arrest warrant* for burglary, then it could not be said that Stegink initiated legal process against plaintiff for the burglary offense, at least not via the arrest warrant affidavit. Despite this, Stegink agrees with plaintiff's allegation that the criminal case in state court involved "burglary and trespassing," and makes no argument as to when that offense was initiated. (*See* ECF No. 11 at 2.) As such, giving the benefit of doubt to plaintiff, the Court will address whether the arrest warrant affidavit set forth a sufficient factual basis for a person to reasonably believe that plaintiff had committed burglary.

Like criminal trespass, Colorado also has three degrees of burglary. Colo. Rev. Stat. §§ 18-4-202, -203, -204. Although the complaint does not allege, and the registry of actions does not indicate, with which burglary offense plaintiff was charged, it would appear that the relevant one is second degree burglary, as the information in the affidavit does not state that the perpetrator used a deadly weapon, assaulted any person, or was armed with explosives, *see id*. § 18-4-202 (first

degree burglary), or that the perpetrator entered or broke into a vault, safe, cash register, or other such equipment, *see id.* § 18-4-204 (third degree burglary).

In Colorado, a person commits second degree burglary if he "knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." Colo. Rev. Stat. § 18-4-203(1). Here, there was sufficient information contained in the arrest warrant affidavit for Stegink to believe that the offense of second degree burglary had been committed. As discussed *supra*, there was sufficient information in the affidavit for a reasonable person to believe that the perpetrator unlawfully entered the witness' home, which, as well as being a dwelling, was also necessarily a building or occupied structure. *See Johnson*, 906 P.2d at 124-125; *Hanna*, 981 P.2d at 629.

This then leaves whether a reasonable person would believe that the perpetrator entered the witness' home "with the intent to commit therein a crime against person or property." *See* Colo. Rev. Stat. § 18-4-203(1). Although this is much closer than the other elements for burglary and criminal trespass discussed herein, considering the totality of the circumstances, a reasonable person could believe that the perpetrator entered the witness' home with the intent to commit a personal or property crime. The witness told Parker that, when he awoke and walked into his hallway, he observed the perpetrator standing in the hallway. (ECF No. 1 at 29.) The witness did not know the perpetrator and told him to get out of the witness' house on two occasions. (*Id.*) From this, a reasonable person could believe that the uninvited and unlawfully present perpetrator entered the witness' home, and progressed into the hallway, in order to commit a property or personal crime, such as, for example, theft. In other words, Stegink could have reasonably inferred that there was

no other reason for the perpetrator to be in the witness' home other than to commit a crime. Of course the perpetrator could have innocently entered the home of a stranger uninvited to "look[ ] for [his] guy," but probable cause does not require certainty. *See Martin*, 613 F.3d at 1302 ("As the standard itself indicates, *probable* cause does not require metaphysical certitude or proof beyond a reasonable doubt. 'Probable cause is a matter of probabilities and common sense conclusions, not certainties.'" (quoting *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009) (emphasis in original, alteration omitted). This is supported by the fact that, after being dispatched and advised of the license plate number on the perpetrator's car, Parker queried the plate number and learned that the perpetrator's car had been reported as stolen a little over three weeks earlier, and the witness later told Steglink that the perpetrator was driving the same car make and color that had been stolen. (*See id*.) From this, a reasonable person could have believed that the perpetrator was in the witness' home to continue his acts of crime. Moreover, a reasonable person could believe that the perpetrator's statement, that he was "looking for my guy," was merely an attempt to disguise his true intentions upon entering the home, especially where there was no indication in the affidavit that the perpetrator had any reason to believe that his friend would be in a stranger's home. (*Id*.)

Ultimately, the information remaining in the arrest warrant affidavit fails to rise above the speculative level that Steglink did not have probable cause to arrest plaintiff for second degree burglary. This is especially the case here where the plaintiff has entirely failed to address the information that remains in the arrest warrant affidavit after excluding all of the information that he alleges to be false. In that light, although Steglink raised a qualified immunity defense at the motion to dismiss stage, which "subjects the defendant to a more challenging standard of review" in that the defendant's conduct is scrutinized as alleged in the complaint, *McAllister v. Kellogg*, 2016 WL

787939, at *1 (10th Cir. Mar. 1, 2016), as set forth in the arrest warrant attached to the complaint, plaintiff has failed to plausibly allege that Stegink violated a clearly established constitutional right in allegedly initiating his arrest for second degree burglary, *see Peterson v. Jensen*, 371 F.3d 1199, 1201-02 (10th Cir. 2004) (setting out the qualified immunity analysis).

Because the Court finds that probable cause existed for both first degree criminal trespass and second degree burglary, there is no need to address whether plaintiff plausibly alleged malice and damages.  *See McCarty*, 646 F.3d at 1285-86.  As a result, because amendment of the complaint would not alter the information remaining in the arrest warrant affidavit, the Court shall DISMISS plaintiff's malicious prosecution claim against Stegink premised upon plaintiff's arrest.

### b.      Plaintiff's Continued Incarceration

In the complaint, plaintiff alleges that the information contained within the arrest warrant affidavit was used to bind him over for arraignment.  (ECF No. 1 at 4.)  To the extent that this alleges a malicious prosecution claim related to plaintiff's continued incarceration, for the reasons discussed *supra* with respect to plaintiff's arrest, plaintiff's continued incarceration did not lack probable cause given that the Court has found that the information remaining in the arrest warrant affidavit provided probable cause for his arrest for first degree criminal trespass and second degree burglary.  Thus, the Court will also DISMISS plaintiff's malicious prosecution claim against Stegink premised upon plaintiff's continued incarceration.  Because all of the potential claims against Stegink have been dismissed, the complaint is DISMISSED as to defendant Stegink.

### C.      Other Objections

Apart from challenging the Magistrate Judge's treatment of his malicious prosecution claim, in his objections, plaintiff also asserts that Senior Judge Babcock should not have dismissed the other

claims raised in his complaint.  (ECF No. 24 at 12.)  Plaintiff did not make this argument before the

Magistrate Judge (*see generally* ECF No. 16), and it is thus waived.  *See Marshall*, 75 F.3d at 1426.

Moreover, in his objections, plaintiff fails to explain on what basis he is seeking reconsideration of

Senior Judge Babcock's February 27, 2015 Order.  (*See generally* ECF No. 24 at 12-16.)  As such,

the Court rejects any request to reconsider Senior Judge Babcock's earlier order.

### D.      Request for Appointment of Counsel

In his objections, plaintiff also appears to request appointment of counsel, or at least argue

that this Court abused its discretion in denying two previous requests for counsel.  (*See* ECF No. 24

at 17.)  First, in *this* case, plaintiff has made no prior requests for appointment of counsel.  In any

event, in light of the Court's findings to dismiss the only remaining claim against Stegink and Scohy,

plaintiff's request for counsel is DENIED AS MOOT.

## IV.    Conclusion

For all of the reasons discussed herein, the Court:

(1)      REJECTS plaintiff's objections to the R&R (ECF No. 24);

(2)      REJECTS IN PART and ADOPTS IN PART the R&R (ECF No. 21);

(3)      DENIES AS MOOT defendants Stegink and Scohy's motion to dismiss (ECF
No. 11);

(4)      DISMISSES plaintiff's malicious prosecution claim against defendants Stegink and
Scohy to the extent it is premised upon both plaintiff's arrest and his continued
incarceration; and

(5)      DISMISSES the complaint (ECF No. 1)

The Clerk is ORDERED to enter Judgment in favor of all defendants.

**SO ORDERED.**

DATED this 8th day of April, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge